# UNITED STATES DISTRICT COURT

for the

__Middle__ District of __North__

__Carolina__ Division



Case No. __19CV1195__

*(to be filled in by the Clerk's Office)*

__Darrell Tristan Anderson__

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

__"SEE attached"__

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

<u>Full Names of Defendants being sued (a Continuation of PAGE 1 of 11)</u>

1. SERGEANT, N. KEEGAN,
2. CORRECTIONAL OFFICER, Mc CONNELL,
3. Unit Manager, Rhonda Yow Almond,
4. GRIEVANCE EXAMINER, Wakenda GREENE,
5. Assistant Superintendent, KENNETH W. Diggs,
6. Superintendent I., Jack Clelland,
7. WESTERN Region DIRECTOR, David Mitchell,
8. N.C. DIRECTOR of Adult Prisons, KENNETH E. Lassiter

Defendant(s)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name      Darrell Tristan Anderson

All other names by which
you have been known:      Offender Anderson

ID Number      0777284

Current Institution      Scotland Correctional Institution

Address      C/O 22385 McGirt's Bridge Rd.

Laurinburg      N.C.      [28352]
     *City*          *State*          *Zip Code*

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name      Sergeant N. Keegan

Job or Title *(if known)*      Correctional Officer (last known as a Sergeant)

Shield Number

Employer      Kenneth E. Lassiter (Last Known)

Address      831 W. Morgan St.

Raleigh      N.C.      27699
     *City*          *State*          *Zip Code*

[✓] Individual capacity    [✓] Official capacity

Defendant No. 2

Name      Correctional Officer McConnell

Job or Title *(if known)*      Correctional Officer (Last Known)

Shield Number

Employer      Kenneth E. Lassiter (Last Known)

Address      831 W. Morgan St.

Raleigh      N.C.      27699
     *City*          *State*          *Zip Code*

[✓] Individual capacity    [✓] Official capacity

Defendant No. 3

Name — Rhonda Tow Almond

Job or Title *(if known)* — Unit Manager of Badin Unit (last Known)

Shield Number

Employer — Kenneth E. Lassiter (Last Known)

Address — 831 W. Morgan St.

Raleigh     N.C.     27699
   *City*      *State*      *Zip Code*

[✓] Individual capacity    [✓] Official capacity

Defendant No. 4

Name — Wakenda Greene

Job or Title *(if known)* — Inmate Grievance Examiner (Last Known)

Shield Number

Employer — Kenneth E. Lassiter (Last Known)

Address — 831 W. Morgan St.

Raleigh     N.C.     27689
   *City*      *State*      *Zip Code*

[✓] Individual capacity    [ ] Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

[ ] Federal officials (a *Bivens* claim)

[✓] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

A violation of Amendment VIII (eight) of the U.S. Constitution (right to be immuned from Cruel and Unusual Punishment).

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

I. The Parties to This Complaint
   (1st Continuation of Page 2 of 11)


B. The Defendant (s)

   Defendant No. 5
   Name: Kenneth W. Diggs
   Job title: Superintendent II, of ALBERMARLE C.I.
   Shield #:
   Employer: Kenneth E. Lassiter
   Address: 831 W. Morgan St.
              Raleigh              , N.C.        27699
              City                  State        Zip Code

   ☑ Individual capacity   ☑ Official capacity


   Defendant No. 6
   Name: Jack Clelland
   Job title: Superintendent I. of ALBERMARLE C.I.
   Shield #:
   Employer: Kenneth E. Lassiter
   Address: 831 W. Morgan St.
              Raleigh              , N.C.        27699
              City                  State        Zip Code

   ☑ Individual capacity   ☑ Official capacity

I. The Parties to This Complaint
(2nd Continuation of Page 2of11)


B. The Defendant(s)


Defendant No. 7
Name: David Mitchell
Job title: Western Region Director
Shield #:
Employer: Kenneth E. Lassiter
Address: 831 W. Morgan St.
          Raleigh          N.C.        27699
           City           / state     Zip Code

☑ Individual capacity  ☑ Official capacity


Defendant No. 8
Name: Kenneth E. Lassiter
Job title: N.C. Director of Adult Prisons
Shield #:
Employer: Todd E. Ishee, Commissioner of Prisons
Address: 831 W. Morgan St.
          Raleigh          N.C.        27699
           City           / state     Zip Code

☑ Individual capacity  ☑ Official capacity

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Defendant Sgt. Keegan, and Defendant C/O McConnell, are/were both employed for the State, by the N.C. DPS, at Albermarle Correctional .... see attached pages ] →

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☑  Convicted and sentenced state prisoner

☐  Convicted and sentenced federal prisoner

☐  Other *(explain)*

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

On February 8th, 2018, at approximately 8:50 A.M., in "D" dorm, if Plaintiff's memory is correct, on the Badin Unit of Albermarle Correctional .... see attached pages ] →

Page 4 of 11

II. Basis for Jurisdiction
(1st Continuation of D - Page 4 of 11)


D.1) Defendant Sgt. Keegan, and Defendant C/O Mc-Connell, are/were both employed for the State, by the N.C. DPS, at Albermarle Correctional Institution, as a Sergeant and Correctional Officer of the Badin Unit. In their Individual and/or Official capacities, and under the Color of State law, they did use "Excessive Force" on Plaintiff and assaulted Plaintiff, depriving Plaintiff of a right to be immuned from cruel and unusual punishment, within the incident that occurred on February 08, 2018, at approximately 8:50 A.M. Both defendants later made libel reports which harmfully dipicted the plaintiff's character and injured his Name and Reputation. Aspects of such libel reports (statements) was later publicized on computer/internet.


2.) Defendant ALMOND RHONDA YOW (Rhonda Yow Almond) are/were employed for the State, by the N.C. DPS, at Albermarle Correctional Institution, as a Unit Manager of the Badin Unit. While In her Individual and/or Official capacities, and under the Color of State law,

II. Basis for Jurisdiction
(2nd Continuation of D - Page 4 of 11)


D. She did fail to act against, and did ignore, the violation(s) of Plaintiff's Constitutionally secured right(s)(committed by subordinates), after she had been given "Direct Knowledge" of such violation(s) through Step One-Unit Response of the Administrative Remedy Procedures (ARP) (She had access to video footage of the violation (the incident which had occurred between Plaintiff and Defendants on February 08, 2018, at approximately 8:50 A.M.)). However, instead of taking action(s) which would preserve/uphold the Plaintiff's right(s), Defendant Rhonda Almond conspired to, and assisted in, the concealing of the violation(s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's rights were/are concerned, Defendant Rhonda Almond has failed to uphold (support) the U.S. Constitution, violating her 'Oath of Office' (oath to uphold the U.S. Constitution), becoming a party to the deprivation of Plaintiff's constitutionally secured rights.

II. Basis for Jurisdiction
(3rd Continuation of D - Page 4 of 11)


D. 3. — Defendant GREENE WAKENDA (Wakenda Greene) are/were employed for the STATE, by the N.C. DPS, on the Inmate Grievance Resolution Board, as a Grievance Examiner. While in her Individual and/or Official capacities, and under the Color of State law, she did fail to act against, and did ignore, the violation(s) of Plaintiff's Constitutionally secured Rights(s) (committed by staff), after she had been given "Direct Knowledge" of such violation(s) through Step Three-Administrative Remedy Response of the ARP (she had access to video footage of the violation—(the incident which had occurred between Plaintiff and Defendants on February 08, 2018, at approximately 8:50 A.M.). However, instead of taking action(s) which would preserve/uphold the Plaintiff's right(s), Defendant Wakenda Greene did conspire to, and assisted in, the concealing of the violation(s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's rights were/are concerned, Defendant Wakenda Greene has failed to uphold (support) the U.S. Con-

II. Basis for Jurisdiction
(4th Continuation of D — 4 of 11)


D. stitution, violating her 'Oath of Office' (oath to uphold the U.S. Constitution) becoming a party to the deprivation of Plaintiff's Constitutionally secured Right(s).


4. Defendant DIGGS KENNETH W. (Kenneth W. Diggs) are/were employed for the STATE, by the N.C. DPS, at Albermarle Correctional Institution, as an Assistant Superintendent (warden). While in his Individual and/or Official capacities, and under the color of State law, he did fail to act against, and did ignore, the violation(s) of Plaintiff's Constitutionally secured right(s) (committed by subordinates), after he had been given "Direct Knowledge" of such violation(s) through Step Two-Area / Complex / Institution Response of the ARP (he had access to video footage of the violation (the incident which had occurred between Plaintiff and Defendants on February 08, 2018, at approximately 8:50 A.M.)). However, instead of taking action(s) which would preserve / uphold the Plaintiff's Rights Defendant Kenneth W. Diggs conspired to, and assisted in, the

D. consealing of the violation(s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's rights are/were concerned, Defendant Kenneth W. Diggs has failed to uphold (support) the U.S. Constitution, violating his 'Oath of Office' (oath to uphold the U.S. Constitution), becoming a party to the deprivation of Plaintiff's Constitutionally secured rights.

5. Defendant Jack Clelland are/were employed for the STATE, by the N.C. DPS, at Albermarle Correctional Institution, as Superintendent (warden). While in his Individual and/or Official capacities, and under the Color of State law, he did fail to act against, and did ignore, the violation(s) of Plaintiff's Constitutionally secured Rights (committed by subordinates), after he had been given "Direct Knowledge" of such violation(s) through letters (written to him, from Plaintiff) and/or the ARP. (Defendant had access to video footage of incident's of the violation & the incident which had occurred between Plaintiff and Defendants on February

II. Basis for Jurisdiction
(6th continuation of D - Page 4 of 11)

D. 08, 2018, at approximately 8:50 A.M.)). However, instead of taking action(s) which would preserve/ uphold the Plaintiff's rights(), Defendant Jack Clelland conspired to, and assisted in, the concealing of the violation(s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's right(s) were/are concerned, Defendant Jack Clelland has failed to uphold (support) the U.S. Constitution, violating his 'Oath of Office' (oath to uphold the U.S. Constitution), becoming a party to the deprivation of Plaintiff's constitutionally secured rights.

6. — Defendant David Mitchell are/were employed for the STATE, by the N.C. DPS, as the WESTERN Regional Director. While in his Individual and/ or Official capacities, and under the Color of State law, did fail to act against, and did ignore, the violation (s) of Plaintiff's Constitutionally secured rights() (committed by subordinates), after

II. Basis for Jurisdiction
(7th Continuation of D- Page 4 of 11)

D. he had been given "Direct Knowledge" of such violation(s), through letters, written to him from Plaintiff and/or the ARP (Defendant had access to video footage of incident of the violation (incident which had occurred between Plaintiff and Defendants on February 08 2018, at approximately 8:50 A.M.)). However, instead of taking action(s) which would preserve/uphold the Plaintiff's Right(s), Defendant David Mitchell conspired to, and assisted in, the concealing of the violation (s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's Right(s) were/was concerned, Defendant David Mitchell has failed to uphold (support) the U.S. Constitution, violating his 'Oath of Office' (oath to uphold the U.S. Constitution), becoming a party to the deprivation of Plaintiff's constitutionally secured Rights.

7. — Defendant Kenneth E. Lassiter are/were employed by the state, for the N.C. DPS, as the

## II. Basis for Jurisdiction
(8th Continuation of B — Page 4 of 11)

b. N.C. Director of Adult Division Prisons. While acting in his Individual and/or Official capacities, and under the Color of State law, did fail to act against, and did ignore, the violation(s) of Plaintiff's Constitutionally secured right(s) (committed by subordinates), after he had been given "Direct Knowledge" of such violation(s), through letters, written to him from Plaintiff and/or the ARP (Defendant had access to video footage of incident of the violation (incident which had occurred between Plaintiff and Defendants on February 08 2018, at approximately 8:50 A.M.). However, instead of taking action(s) which would preserve/ uphold the Plaintiff's rights(s), Defendant Kenneth E. Lassiter conspired to, and assisted in, the concealing of the violation(s), by acting and proceeding as if the Plaintiff's claims was false or inaccurate. Thus, whereas the Plaintiff's rights(s) were/are concerned, Defendant Kenneth E. Lassiter has failed to uphold (support) the U.S. Constitution, violating his 'Oath of Office' (oath to

II. Basis for Jurisdiction
( 9th Continuation of D - Page 4 of 11)

D. uphold the U.S. Constitution ), becoming a party
to the deprivation of Plaintiff's Constitutionally
secured right(s).


– END OF BASIS FOR JURISDICTION –

I V. Statement of Claim(s)

B. — On February 8th, 2018, at approximately 8:50 A.M., in "D" dorm, if Plaintiff's memory is correct, on the Badin Unit of ALBERMARLE CORRECTIONAL INSTITUTION, Plaintiff was awaken from his sleep, by an order given over the intercom of the dorm/unit-Plaintiff had been ordered to report to the Officer's Station.

— Moments later, when Plaintiff had arrived at the Officer's station, Plaintiff found Defendant Sergeant N. KEEGAN therein after Defendant Keegan) and Defendant Correctional Officer McConnell waiting for him (Plaintiff). Upon Plaintiff's arrival, Sgt. N. KEEGAN (defendant) asked, "Is this him?"

— Once Defendant KEEGAN had confirmed his target, he glared at Plaintiff, and hostilely ordered, "Go back in there and move that chair, that's by your bunk, to the bottom sleeping quarters!"

— Plaintiff asked if he had been awaken out of his sleep only to be ordered to move a chair,

B. — After it was confirmed that such was
the fact, Plaintiff replied, "I did not place the
chair in its current location, so its not my resp-
onsibility to move the chair." Plaintiff also poi-
nted out that dorm Janitors are paid wages for
duties which consist of cleaning the sleeping quar-
ter(s).

— Defendant Keegan then hostilely replied, "I
don't care who placed the chair up there, I'm
giving you a direct order to move it!"

— It was then that Plaintiff began to recall
a similar argument, which had transpired bet-
ween Plaintiff and Correctional Officer Dennis,
four (4) days prior, on February 04th 2018. An
argument wherein C/O Dennis had ordered Plain-
tiff to move a chair off of the top sleeping qua-
rters. However, Plaintiff had refused to comply,
saying to C/O Dennis, "Your order is not within
reason, because I did not place the chair up
there. Its not my responsibility. Find the
person responsible for placing the chair up

IV. Statement of Claim(s)
(3rd Continuation of B- Page 4 of 11)


B. up THERE and make them move it."
  — C/O DENNIS had argued that the order was
within REASON.

  — Plaintiff had argued that it was not within
REASON; and gave an example, saying, "If you were
to awake me only to ask me to move a chair, I
would not do it because it would be disrespectful,
and not within REASON; because you could have
gotten anyone to move the chair.
  — After Plaintiff had recalled the argument
which had transpired between him (Plaintiff) and C/O
DENNIS, four (4) days prior, Plaintiff noticed that C/O
DENNIS, at the current time, was in the Control Booth,
and Plaintiff had much confidence in the beliefs
that C/O DENNIS had told Defendant KEEGAN (c/o DENNIS
Sergeant) about the dispute which had transpired
four (4) days prior, wherein, Plaintiff vowed that
he (Plaintiff) would not follow a given order if
he (Plaintiff) had been awaken from sleep to be
given the order. Plaintiff was also confident that
Defendant KEEGAN was making a conscious effort to

IV. Statement of Claim(s)
(4th Continuation of B - Page 4 of 11)


B. prove to subordinates that he (KEEGAN) was going to make Plaintiff do what Plaintiff told C/O DENNIS he (Plaintiff) wasn't going to do, 4 days prior. Thus Defendant Keegan's actions had been deliberate and antagonizing in its target toward Plaintiff (Defendant Keegan was upset that Plaintiff had refused to follow C/O DENNIS' order 4 days prior).

— Plaintiff continued to argue with Defendant Keegan for a few more seconds, then decided to flee Defendant Keegan's presence.

— However when Plaintiff had arrived at the chair, furious that Defendant Keegan had by-passed dorm Janitors and others, whom were active in the dayroom area of the dorm, to antagonize and target Plaintiff, by awaking Plaintiff from sleep, to order Plaintiff to move the chair, that Plaintiff drop the chair from the top sleeping quarters to the bottom. However, Plaintiff did survey the bottom area, to be sure no one was in harm's way, before "dropping" the chair, and Plaintiff "did not" "throw" the chair from the top sleeping quarters as later falsely reported.

B. —— Plaintiff then walked back down stairs,
to be met by Defendant Keegan, near the middle
of the dayroom/dorm. Defendant Keegan held a
pair of handcuffs in his hand. However Defend-
ant Keegan did not tell Plaintiff to submit to
restraints, instead he told Plaintiff, "I hope
you refuse to cuff up so I can make you!"
—— Plaintiff asked, "is that an order or a challenge?"
Then Plaintiff attempted to walk on by Defendant
Keegan, but Defendant Keegan grabbed Plaintiff's
arm, and pushed it.
—— Plaintiff had no time to respond, Defendant
Keegan immediately followed his own action, by
placing the palm of his hand(s) around the
Plaintiff's throat, and aggressively and
maliciously slammed Plaintiff into a nearby
wall.
—— It then felt as if Defendant Keegan was
attempting to bang Plaintiff's head into the wall.
—— At that time, while Plaintiff was under attack,
Plaintiff had not assaulted or attempted to

IV. Statement of Claim(s)
(6th continuation of B~ Page 4 of 11)


B. assault anyone, not even Defendant Keegan.
— Defendant Keegan proceeded with his excess-
ive, malicious, wanton attack/assault, by remov-
ing his palm(s) and/or fingers from Plaintiff's
throat, to place them behind Plaintiff's neck, as
the defendant (Keegan) pulled downward and back-
peddled, in an attempt to violently slam Plain-
tiff face-first into the concrete.

— Still plaintiff had shown no signs of an assault
or attempted assault on Defendant Keegan. However,
mentally Plaintiff searched for answers to minimize
the excessive attack/assault.
— Plaintiff had been turnt side ways during the
incident, but upon turning to face Defendant
Keegan, the Plaintiff was rewarded with a
malicious punch to the mouth, by Defendant
Keegan.
— At this point, Plaintiff was certain that he had
only himself for his own protection, and did put
forth an effort to get Defendant Keegan to
cease the excessive, malicious, wanton attack/
assault. So, Plaintiff, out of desperation, threw

IV. Statement of Claim(s)
(7th Continuation of B- Page 4 of 11)

B. "ONE" punch (to Plaintiff's best memory)
at Defendant Keegan's jaw area.
  — Plaintiff's action had not been excessive
nor malicious — Plaintiff only sought to get
Defendant Keegan to cease his excessive,
malicious, wanton attack/assault.
  — Plaintiff's "counter-action" did cause Defen-
dant Keegan to abandon his attack/assault.


2. — Defendant Correctional Officer McConnell
(Defendant McConnell hereinafter) had watched
the entire incident from the entrance of the
dorm, However, she had not called a Code Seven
(7) which is procedure when staff is under attack
(as was later claimed). Neither did she intervene,
to preserve/provide security to Plaintiff, while
Plaintiff was under attack, but she did intervened
when Plaintiff threw a punch to defend himself.
  — Defendant McConnell stepped in and deli-
vered a strike to Plaintiff leg, with a baton,
while yelling, "Stop!"

B. — Plaintiff did not attempt to attack Defendant McConnell after she had intervened, contrary to the characteristics of an assaultive — out of control offender, as Plaintiff was false claimed to have been. However, Plaintiff no longer under the "excessive" attack/assault by Defendant Keegan, was able to submit to the restraints of Plaintiff's own free will.

— Plaintiff willfully turnt to face the nearby wall, placing his (Plaintiff's) hands behind his (Plaintiff's) back, to show that he was not resisting, though no one had "ever" given him (Plaintiff) an order to submit, not even before Plaintiff had willfully submitted.

— Neither of the defendants had ever tried to pepper spray the Plaintiff as is proper procedure when an offender (Plaintiff) are showing signs of assaultive behavior.

— Plaintiff did allow Defendant Keegan to place restraints on Plaintiff's wrist.

— After Plaintiff had been placed in wrist rest-

B. pants, and was about to be escorted to Restrictive Housing a Code 4 (Inmate distur-bance) was called, not a Code (7) Seven.

— Plaintiff was seen by medical staff immediately upon, or shortly after his arrival in Restrictive Housing

— Plaintiff was seen by authority(s) and asked to write a Incident report/statement of what happened during use of force.

— Plaintiff was transferred approximately an hour and thirty minutes later. After arriv-ing at Piedmont Correctional Institution, 12 hours expired, then Plaintiff was seen by medical staff at Piedmont C.I.

3.) — Defendant Rhonda Yow Almond (Unit Man-ager), Defendant Kenneth W. Diggs (Assistant superintendent/warden), and Defendant Wakenda Greene (Inmate Grievance Exami-ner) are the Administrators, whom respon-ded at each step (Step One, Step Two, and

B. Step Three) of Plaintiff's grievance in
the ARP. The video footages of the assault
on Plaintiff was sufficient to classify "dir-
ect Knowledge" of violations committed by
subordinates, which deprived Plaintiff's constit-
utionally secured Rights. Such footage was
or should have been exploit in the process of
these Administrators executing a proper and
thorough investigation. However these Adminis-
trators consciously and willfully ignored subo-
rdinates/staff violation, and responded to Plat-
ntiff's grievance (No.: 3500-2018-611-00203), as
if the Plaintiff's claims were false. Thus, these
Administrators are guilty of a willful act to
conceal the violations of subordinates, and
they have, thereby, become a party (conspir-
ator) of the violation, which deprived Plai-
ntiff's constitutionally secured Rights. Thus, De-
fendant Almond, Defendant Diggs, and
Defendant Greene have all failed to
uphold (support) the U.S. Constitution,
contrary to their 'Oath of Office'.

B. 4.) —— Defendant Jack Clelland (Superinten-
dent/Warden) and David Mitchell (Western Reg-
ional Director), through written correspondence
from Plaintiff, ARP-Grievance procedure, incid-
ent Report, and an Internal investigation,
where in video footage of incident was available,
were, both, given "Direct Knowledge" of the
violation of subordinates which deprived the
Plaintiff's constitutionally secured rights. However,
these two defendants "failed to act", choosing to
ignore subordinates' violation even though video
footages of the dorm reveal such violations.
These defendants held superior positions of
Authority and proceeded as if they had no
knowledge of subordinates violation, giving
responses to Plaintiff's claim, as if the claim
was untrue. Therefore they both are guilty of
a willful act to conceal subordinates' violation,
and thereby have become party(s) (conspirators)
of the violation, which deprived Plaintiff's
constitutionally secured rights. Thus they have
failed to uphold (support) the U.S. Constitution,

IV. Statement of Claim(s)
( 12th Continuation of B – Page 4 of 11)

B. Contrary to their 'Oath of Office'.

5. Defendant Kenneth E. Lassiter ( N.C. Director of Adult Division Prisons) has made customs and/ or has allowed such customs (policies/procedures) to continue, wherein subordinates can and have ig- nored the violations of Plaintiff's (offenders) Constitutionally secured rights, under a veil of procedural Investigations /Grievances/ Appeals/ etc. However Plaintiff (offenders) is "very" rare- ly assisted with adequate assistance/concern(s), or provided remedy, through such customs (procedures), while subordinates' violation(s) are concealed through pre-designed - customary response(s) void of actual concern or investigation. Wherein such customs (procedures/policies) super- ior Administrators always claim, that Plaintiff (offenders) are at fault for injuries that they suffer; that Plaintiff's claim has been adequately addressed by staff; that Plaintiff

IV. Statement of Claim(s)
(13th Continuation of B - Page 4 of 11)

B. has insufficient evidence to support his
claims — while staff refuse to review key
sources (video footages, etc.) which actually
would support Plaintiff's (offender's) claim.
— Such pre designed/pre-calculated/set resp-
onses, without thorough and/or genuine investig-
ation(s) are and were given to Plaintiff's grie-
vance (No.: 3500-2018-611-00203). Defenda-
nt Kenneth E. Lassiter, had "direct knowledge"
through investigation reports, video footages, etc.,
and had/has final say so in such matters (Appeals,
Grievances, investigations, procedures), however,
he chose to consciously and willfully ignore
subordinates' violation, which deprived the
Plaintiff's constitutionally secured rights, and
through this (his willful ignorance) he has
become a party (conspirator) to violation
that deprived Plaintiff's constitutionally
secured rights, and thus are also guilty of
failure to uphold his 'Oath of Office' (oath
to support/uphold the U.S. Constitution.

IV. Statement of Claim(s)
(14th Continuation of B — Page 4 of 11)

B. 6. — Defendant KEEGAN and Defendant McConnell, both, later, made harmful libel statements, on DC-138 B statement forms, falsely dipicting the Plaintiff as the instigator of the physical confrontation, which had transpired between the Plaintiff and these two aforementioned defendants. Thus Plaintiff's character was falsely portrayed.

Such libel statements was later publicized (to some degree), on the INTERNET, and did harm Plaintiff's name (reputation), causing the Director's Classification Committee board (DCC) to make a determination to place Plaintiff in Solitary Confinement (RHCP) for 180 days, and also caused Plaintiff to lose 50 days cred time and a loss of $10 from Plaintiff's Trust Fund Account.

— END OF STATEMENT OF CLAIM(S)/B Page 4 of 11 —

C. What date and approximate time did the events giving rise to your claim(s) occur?

FEBRUARY 08, 2018, at approximately 8:50 A.M.

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Plaintiff was deprived of a Right to be immuned from Cruel and Unusual Punishment, to wit: Sgt. N. Keegen aggressively placed the palm(s) of his hand(s) around the Plaintiff's throat, to slam Plaintiff into a NEARby wall, and attempted to bang Plaintiff's head into the wall, then ... [SEE attached pages]→

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Plaintiff sustained injuries of a bruised and swollen upper lip; humiliation, by libel statements, whereby Plaintiff's character was defamed. Such libel statements caused Facility Classification Committee and Director's Classification Committee to determine Plaintiff a Security Interest, whereby ... [SEE attached pages]→

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Defendant N. Keegan is being sued for $75,000, for compensatory damages and $75,000 for punitive damages in his private capacity (Individual Capacity) Defendant McConnell is being sued for $75,000, for compensatory damages and $75,000 ... [SEE attached pages]→

IV. Statement of Claim(s)
(1st Continuation of D - Page 5 of 11)

D. — Plaintiff was deprived of a right to be
immuned from Cruel and Unusual Punishment, to
wit: Sgt. N. Keegan aggressively placed the palm(s)
of his hand(s) around the Plaintiff's throat; to
slamm plaintiff into a nearby wall, and attempted
to bang Plaintiff's head into the wall, then
attempted to slam Plaintiff's face into the concrete
floor, followed by a close right fist to Plaintiff's
mouth. C/O McConnell failed to protect and/or
provide security to Plaintiff, while Plaintiff was
under the excessive, malicious, unwarranted
attack/assault. However C/O McConnell did assist
Sgt. Keegan; by striking the Plaintiff on the
left leg with a baton. Both of the above
defendants deprived Plaintiffs of rights guaranteed
within Amendment 8 of U.S. Constitution. (There
are 2 live cameras in the dorm that this
violation occurred in).

Defendant Rhonda Pow Almond, Wakenda Greene,
and Kenneth W. Diggs are all the Administrators
whom responded to each step of Plaintiff's grieva-

IV. Statement of Claim(s)
(2nd Continuation of D-Page 5 of 11)


Donce (No.: 3500-2018-011-00203). Through
the ARP-Grievance procedure, these Administ-
rators were given "Direct Knowledge" of their
subordinators' violation, but they chose to ign-
ore violations and/or proceed in a manner which
concealed the violations, failing to act with
regards to uphold the U.S. Constitution, whereas
Plaintiff's rights were/are concerned. Their
actions were contrary to their 'Oath of Office'.
These Administrators have assisted in the depriv-
ation of Plaintiff's Constitutional Rights, by
'failure to act' and efforts to conceal viola-
tions.

     Jack Clelland, David Mitchell and Kenneth E.
Lassiter are Superintendent(Warden)/Region Director/
Director, whom were given "Direct Knowledge"
(through ARP-Grievance, letters, etc.) of subor-
dinates' violation. However they all chose to
act as if the violation had not occurred.
They all failed to act with actions which
would uphold the U.S. Constitution, whereas the

IV. Statement of Claim(s)
(3rd Continuation of D- Page 5 of 11)

D.— Plaintiff's Constitutional Rights are/were concerned. Their actions were contrary to their 'Oath of Office'. These high Superior Authorities have assisted in the deprivation of Plaintiff's Constitutional Rights, by 'Failure to Act' and/or their efforts to help conceal violations.

Claimant has grievances and other documents pertaining to his claim. There were two video cameras in the dorm in which the incident, spoken of herein, occurred in.
- END OF STATEMENT OF CLAIM(S)/ D Page 5 of 11 -

V. Injuries

Plaintiff sustained injuries of a bruised and swollen upper lip; humiliation, by libel statements, whereby Plaintiff's character was defamed. Such libel statements caused Facility Classification Committee and Director's Classification Committee to determine Plaintiff a Security Interest, whereby Plaintiff was placed in Solitary Confinement (RHCP) for 180 days, wherein Plaintiff's liberty was restrained. Also, aspects of such libel statements was published on the internet, misrepresenting Plaintiff's behavior (character) to the entire world, causing injur(ies) to Plaintiff's reputation and name. Plaintiff also suffered a loss of $10 (ten dollars) from his Trust Fund Account, and a loss of 50 cred days (good time).

— END OF INJURIES —

VI. Relief
(1st Continuation of Relief Sought - Page 5 of 11)

Defendant N. Keegan is being sued for $75,000, for compensatory damages and $75,000 for punitive damages in his private capacity. (Individual Capacity)

Defendant McConnell is being sued for $75,000, for compensatory damages and $75,000 for punitive damages in her Individual capacity. (private).

Defendant ALMOND, RHONDA YOW, and/or Rhonda Yow Almond is being sued for $75,000, for compensatory damages and $75,000 for punitive damages in her Individual and/or Official capacities.

Defendant GREENE, WAKENDA, and/or Wakenda Greene is being sued for $75,000, for compensatory damages and $75,000 for punitive damages in her Individual and/or Official capacities.

Defendant DIGGS, KENNETH W., and/or Kenneth W. Diggs is being sued for $75,000, for comensatory damages and $75,000 for punitive damages in

VI. Relief
( 2nd Continuation of Relief sought - page 5 of 11)

in his Individual and/or Official capacities.

Defendant Jack Clelland is being sued for $75,000
for compensatory damages and $75,000 for punitive
damages in his Individual and/or official capacities.

Defendant David Mitchell is being sued for $75,000
for compensatory damages and $75,000 for punit-
ive damages in his Individual and/or Official
capacities.

Defendant Kenneth E. Lassiter is being sued
for $75,000 for compensatory damages and $75,000
for punitive damages in his Individual and/or
Official capacities.

Plaintiff seeks Injunctive Relief, asking the
court to order the defendant(s) to remove
the harmful libel statements from the Public
Record (internet) or any other electronical
computer device, where libel statements may

VI. Relief
(3rd Continuation of Relief Sought - page 5 of 11)


appear.

Plaintiff also seeks from this court
discretion to amend this complaint whereever
may be necessary.

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Plaintiff was confined at Albermarle Correctional Ins-
titution when he was assaulted by staff. Plaintiff was
later transferred to Piedmont C.I. and then Mountain View C.I.
while other deprivations took place within the ARP-Grievance.

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☑ No

☐ Do not know

If yes, which claim(s)?

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

Plaintiff file grievance at Piedmont Correctional Institution.

2.    What did you claim in your grievance?

That Plaintiff had suffered Cruel and Unusual Punishment, by way of Excessive Use of Force.

3.    What was the result, if any?

Staff/supervisors ignored and/or concealed Plaintiff's claims, as if the violation had never occurred (as if staff had not committed any violations. Staff response(s) showed no concern for Plaintiff's claim.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Plaintiff exhausted every step and appealed grievance to the highest level known to the Plaintiff. The process is complete

    F.      If you did not file a grievance:

          1.    If there are any reasons why you did not file a grievance, state them here:

          2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

    G.      Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☑ Yes

☐ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.    Parties to the previous lawsuit

        Plaintiff(s)    Darrell Tristan Anderson

        Defendant(s)    N.C. DPS, et al.

    2.    Court *(if federal court, name the district; if state court, name the county and State)*

        U.S. District Court for the Middle District of N.C.

    3.    Docket or index number

        1:19-cv-00517-LCB-LPA

    4.    Name of Judge assigned to your case

        Magistrate Judge, L. Patrick Auld

    5.    Approximate date of filing lawsuit

        06/27/19

    6.    Is the case still pending?

        ☐ Yes

        ☑ No

        If no, give the approximate date of disposition.    07/23/19

    7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)* Case was dismissed, sua sponte without prejudice to Plaintiff filing a new complaint on the proper forms, which corrects the defects cited within the Magistrate Judge's Recommendation.

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s) _____

Defendant(s) _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.    Docket or index number

_____

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    12/02/2019

Signature of Plaintiff        Darrell Anderson
Printed Name of Plaintiff     Darrell Tristan Anderson
Prison Identification #       0777284
Prison Address    C/O 22385 McGirt's Bridge Road
                  Laurinburg          N.C.    [ 28352 ]
                     City            State      Zip Code

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney         _____
Printed Name of Attorney      _____
Bar Number                    _____
Name of Law Firm              _____
Address                       _____
                              _____
                      City         State      Zip Code
Telephone Number              _____
E-mail Address                _____

Case 1:19-cv-01195-LCB-LPA   Document 2   Filed 12/06/19   Page 45 of 45