IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARRELL TRISTAN ANDERSON,    )
                             )
        Plaintiff,            )
                             )
    v.                        )    1:19CV1195
                             )
SGT, N. KEEGAN, et al.,       )
                             )
        Defendant(s).         )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, submitted a pro se complaint under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § l915(a). The Complaint names two prison guards at Albemarle Correctional Institution, Defendants Sergeant N. Keegan and Correctional Officer McConnell, as Defendants in the case by alleging that they used excessive force against Plaintiff and later wrote false statements claiming that the use of force was justified. The Complaint also seeks to hold six other prison administrators liable because they did not handle Plaintiff's grievance concerning the incident in the way he believes proper.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

As to the first basis for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 256-57 (4th Cir. 2004) (some internal quotation marks omitted). As part of this review, the Court may anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995) (en banc); Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983).

Further, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

For the reasons that follow, one of Plaintiff's claims against Defendants Keegan and McConnell should proceed, but his other claims should be dismissed for being frivolous or for failing to state any claim upon which relief can be granted.

Regarding Defendants Keegan and McConnell, the Complaint alleges that on the morning of February 8, 2018, Defendant Keegan awakened Plaintiff and ordered him to remove a chair from his sleeping area. (Docket Entry 2 at 18.)[2] After a disagreement on the matter, Plaintiff dropped the chair from the top sleeping tier onto the bottom floor of the unit. (Id. at 21.) The Complaint states that Plaintiff then walked downstairs, where Defendant Keegan met him while holding handcuffs and stated, "'I hope you refuse to cuff up so I can make you.'" (Id. at 22.) Plaintiff responded by asking whether the statement was "'an order or a challenge.'" (Id.) When he attempted to walk past Defendant Keegan, Keegan allegedly grabbed Plaintiff's arm and pushed it before placing his hands on Plaintiff's throat and

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

[2] All page citations refer to the page numbers listed in the footer displayed on the documents in this Court's electronic case filing database.

-3-

slamming his head into a nearby wall. (Id.) The Complaint states that "[i]t then felt as if Defendant Keegan was attempting to bang Plaintiff's head into the wall" and that Keegan attempted to slam Plaintiff face first onto the concrete. (Id. at 22-23.) Allegedly, Plaintiff then turned to face Defendant Keegan, only to be punched in the mouth. (Id. at 23.) At that point, Plaintiff, allegedly in self-defense, threw a punch at Defendant Keegan's jaw, causing Keegan to stop the alleged attack. (Id. at 23-24.) The Complaint claims that Defendant McConnell, who had watched the entire incident up to that point without intervening to help Plaintiff, stepped in and used her baton to strike Plaintiff's leg. (Id. at 24.) It alleges that Plaintiff then turned his back to the officers and placed his hands behind his back, ending the altercation. (Id. at 25.) The Complaint also asserts that, following the incident, Defendants Keegan and McConnell wrote statements, later publicized to some degree on the internet, "falsely dipicting [sic] the Plaintiff as the instigator of the physical confrontation," thereby harming his reputation and causing officials to place him in solitary confinement for 180 days, take 50 days of credit time from him, and remove $10.00 from his prison trust account. (Id. at 31.) Plaintiff allegedly suffered a bruised and swollen lip due to the altercation, as well as humiliation and the punishments just described due to the allegedly libelous statements. (Id. at 32, 36.)

Taken in the light most favorable to Plaintiff, the Complaint can be read to state a claims against Defendants Keegan and McConnell for the use of excessive force in violation of § 1983. Therefore, those claims should proceed.

-4-

Case 1:19-cv-01195-LCB-LPA   Document 3   Filed 05/13/20   Page 4 of 8

As for Plaintiff's libel claims, those claims arise under state law and the applicable statute of limitations bars those claims. The application of the appropriate statute of limitations is an affirmative defense that the Court may consider in this context. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655-56 (4th Cir. 2006) (citing Nasim, 64 F.3d at 955). Under N.C. Gen. Stat. § 1-54, the statute of limitations in North Carolina for libel is one year. A plaintiff's cause of action accrues, and the statute of limitations runs, from the date on which he "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim, 64 F.3d at 955. Here, the incident underlying the Complaint occurred on February 8, 2018. Plaintiff filed his current Complaint on December 6, 2019, although, on May 17, 2019, Plaintiff filed an earlier deficient complaint in case 1:19CV517. The Court dismissed that filing without prejudice due to multiple defects. However, even using the earlier case for the filing date for Plaintiff's claims, the claims are out of time because Exhibits A and B to the Complaint (1:19CV517, Docket Entry 2) in that case show that Defendants made the allegedly libelous statements blaming Plaintiff for the altercation at least prior to a disciplinary hearing conducted on February 27, 2018, or nearly fifteen months before Plaintiff filed the first case. Plaintiff necessarily knew of those statements at least by the conclusion of the hearing, which means that his cause of action accrued on or before February 27, 2018 and that his claims for libel are now time-barred. Those claims should be dismissed.

Plaintiff's remaining claims involve six prison administrators: 1) Rhonda Yow Almond, Unit Manager of Badin Unit where the altercation occurred, 2) Wakenda Greene,

Inmate Grievance Examiner, 3) Kenneth Diggs, Superintendent II at Albemarle Correctional Institution, 4) Jack Clelland, Superintendent I at Albemarle Correctional Institution, 5) David Mitchell, the Western Region Director, and 6) Kenneth Lassiter, the North Carolina Director of Adult Prisons. Specifically, the Complaint alleges that Defendants Almond, Diggs, and Greene handled Plaintiff's administrative grievances concerning the altercation and ignored Defendants Keegan and McConnell's violations of his rights. (Docket Entry 2 at 26-27.) The Complaint adds a similar claim as to Defendants Clelland and Mitchell's handling of the grievance procedure and an internal investigation. (Id. at 28.) Finally, the Complaint alleges that Defendant Lassiter created or allowed customs, policies, and or procedures that allowed the other administrative Defendants to act as they did in handling the administrative process and investigation. (Id. at 29-30.)

To the extent that Plaintiff attempts to name the administrative Defendants based on theories of *respondeat superior* or predicated solely on a their identity as supervisors, those theories of liability do not exist under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Similarly, Plaintiff cannot maintain a claim that these Defendants denied his attempts at receiving administrative remedies, because there is no substantive due process right to a prison grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, Defendants' handling of the administrative process, whether by direct involvement or the creation and enforcement of procedures, did not violate Plaintiff's federal constitutional rights. The same is true for the contention that the administrative Defendants failed to conduct a proper investigation. Even if the actions of Defendants Keegan and McConnell

-6-

Case 1:19-cv-01195-LCB-LPA    Document 3    Filed 05/13/20    Page 6 of 8

could be construed as an alleged crime, there is still no constitutional right to an investigation. Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002). The Complaint sets out no viable claim against Defendants Almond, Greene, Diggs, Clelland, Mitchell, and Lassiter and it should be dismissed as to those Defendants. Only Plaintiff's claims against Defendants Keegan and McConnell for excessive force under § 1983 should proceed.

As for Plaintiff's request to proceed *in forma pauperis*, § 1915(b)(1) requires that Plaintiff make an initial payment of $20.00. Failure to comply with this Order will lead to dismissal of the Complaint.

IT IS THEREFORE RECOMMENDED that all of Plaintiff's claims be dismissed for the reasons set out above with the exception of his excessive force claims under § 1983 against Defendants Keegan and McConnell be allowed to proceed.

IT IS ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that within twenty (20) days from the date of this Order Plaintiff make an initial filing fee payment of $20.00.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of July of 2020, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS FURTHER ORDERED that all payments shall be designated as made in payment of the filing fee for Civil Action No. 1:19CV1195, and shall be paid to the Clerk,

U.S. District Court for the Middle District of North Carolina. In the event Plaintiff is transferred to another institution, the balance due shall be collected and paid to the Clerk by the custodian at Plaintiff's next institution. A copy of this Order shall be sent to Plaintiff's current custodian.

IT IS FURTHER ORDERED that this action be filed, but that further proceedings and service of summons as to the remaining Defendants be stayed until Plaintiff either (1) submits to the Court the initial payment noted above, or (2) in the alternative submits a motion for relief from the stay, and a statement made under penalty of perjury that he has not had access to any funds for the initial payment noted above for the 20-day period.[3]

FAILURE TO COMPLY WITH THIS ORDER IN A TIMELY MANNER WILL RESULT IN DISMISSAL OF THIS ACTION WITHOUT FURTHER NOTICE TO PLAINTIFF.

This, the 13th day of May, 2020.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

[3] The Court notes that, should Plaintiff meet these requirements so that summonses will be issued, the Clerk will provide him with summons forms, which he must complete. In doing so, he should not use the addresses used in the Complaint, which appear to be the address of the North Carolina Department of Public Safety in Raleigh. Typically, the home address of a defendant is appropriate. However, it is also the typical practice of defendants working within the North Carolina prison system to accept service at the prison where they work so that their home addresses are not revealed during the litigation. Therefore, Plaintiff may choose to use the address of Albemarle Correctional Institution for the summonses. If this proves insufficient, the Court will deal with any service issues as appropriate.